**KUENSTER v. MEREDITH, Secretary of Agriculture, et al.**

(District Court, N. D. Illinois, E. D. April 13, 1920.)

1. War ⊂⇒4—**Licenses granted under Food Control Act may be revoked.**

Under Food Control Act (Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r) authorizing the President to license the importation or distribution of necessaries and to prescribe regulations for the issuance of licenses, etc., the power to revoke licenses so issued is implied.

2. War ⊂⇒4—**Overcharge by commission merchant for feed for stock not ground for revoking license then not unlawful.**

Under Food Control Act, § 4 (Comp. St. Ann. Supp. 1919, § 3115⅛ff), making it unlawful to make any unjust and unreasonable rate or charge in handling or dealing in necessaries, section 5 (section 3115⅛g), punish-

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing violations, and the regulations of the President thereunder, prohibiting unjust charges for feeding live stock in connection with stockyards, it was not ground for revoking a live stock commission agent's license that he charged more for feed than the cost of the feed to him, where the overcharge was not willful or intentional, but due to the method of purchasing and disposing of hay and feed at the stockyards.

**3. United States ☞125—Suit to enjoin revoking of license not suit against United States.**

A suit to enjoin the Secretary of Agriculture from revoking a live stock commission agent's license under the Food Control Act (Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r) was not one against the United States.

**4. Injunction ☞75—Revocation of license under Food Control Act may be restrained.**

The threatened revocation by the Secretary of Agriculture of a live stock commission agent's license under the Food Control Act (Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r) may be enjoined, as there is no adequate remedy at law, and irreparable injury would result from such revocation.

In Equity. Suit by Earl H. Kuenster, doing business as the Kuenster Live Stock Commission Company, against E. Meredith, Secretary of Agriculture, and others. On motion to dismiss the supplemental bill. Motion denied, and temporary injunction continued.

Sims, Welch & Godman, and Winston, Strawn & Shaw, all of Chicago, Ill., for plaintiff.

Charles F. Clyne, U. S. Atty., and Frederick Dickinson, Asst. U. S. Atty., both of Chicago, Ill., for defendants.

SANBORN, District Judge. This is a motion to dismiss a supplemental bill, filed March 25, 1920, for an injunction against the Secretary of Agriculture, the former Secretary, and certain officers of the Bureau of Markets, to restrain the revocation of the license of the plaintiff, issued under Food Control Act Aug. 10, 1917, 40 Stat. 276, U. S. Comp. Stat. 1919 Supp. § 3115⅛e, Fed. Stat. Ann. 1918 Supp. 181. The original bill was filed August 26, 1919, against the former Secretary and market officers. Secretary Houston resigned his office, and Secretary Meredith succeeded him in February, 1920, and was therefore made a defendant under Act Feb. 8, 1899, 30 Stat. 822, U. S. Comp. Stat. § 1594, 8 Fed. Stat. Ann. (2d Ed.) 953. Caledonian Coal Co. v. Baker, 196 U. S. 432, 25 Sup. Ct. 375, 49 L. Ed. 540.

[1] To state the case briefly: The Food Control Act made the live stock commission business at the Chicago stockyards unlawful unless licensed by the Secretary of Agriculture. There is nothing in the statute, the presidential proclamation, or the rules and regulations expressly making the license revocable; but these stockyards licenses themselves expressly provide that each one is subject to revocation for violation by the licensee of any provision of the statute or regulations. The power to revoke is of course implied. Plaintiff admits the reservation is valid.

[2] The question, then, is whether the licensees have violated the

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

statute, or the regulations referred to in section 5 thereof. Section 4 provides:

"It is made unlawful for any person willfully  *  *  *  to engage in any discriminatory and unfair, or any deceptive or wasteful, practice or device, or to make any unjust and unreasonable rate or charge in handling or dealing in or with any necessaries." Comp. St. Ann. Supp. 1919, § 3115⅛ff.

Section 7 of regulation 3 provides:

"A licensee shall not make any unjust  *  *  *  charge  *  *  *  for feeding  *  *  *  live stock in or in connection with stockyards."

Section 5 of the Food Control Act provides:

"Any person who  *  *  *  wilfully fails or refuses to discontinue any unjust, unreasonable, discriminatory and unfair  *  *  *  profit or practice, in accordance with the requirement of an order issued under this section, or any regulation prescribed under this section, 'shall" be punished. Comp. St. Ann. Supp. 1919, § 3115⅛g.

There is no evidence of any kind in the record of any willful violation of the statute or regulations. The finding of Secretary Meredith does not so decide. It reads thus:

"Upon consideration of all the evidence in this case, and in the exercise of the authority conferred upon me pursuant to said act, proclamation, and the regulations of the President governing licensees thereunder, dated July 26, 1918, I hereby find that since the date of the issuance of said license, in carrying on your business as a commission man thereunder, you exacted from persons who consigned live stock to you for sale, on account of feed procured and furnished by you to such live stock, the sum of $2,525.60 in excess of the cost of such feed to you; that in handling such feed account for such customers you were acting only as their agent, and did not disclose to them the fact that you were exacting such overcharges; and that by reason of such conduct you have been guilty of making an unjust charge, in violation of section 4 of said Act of August 10, 1917, and of section 7 of regulation 3 of said Regulations.

"Done in duplicate in the District of Columbia on 19th March, 1920."

The supplemental bill alleges that plaintiff has conducted his business under the license in all respects according to law; that while there is a charge to his customers on his books for feed charged to them from July, 1918, to June, 1919, for $2,525.60 more than the amount paid by him for such feed, yet—

"that it is and has been impossible, owing to the methods of doing business which have existed for many years, and which are known to and acquiesced in by the shippers and customers of your orator, to determine to whom such money thus showing as a credit upon the books actually belongs."

"That neither the President, the Secretary of Agriculture, nor any of the subordinates charged with the enforcement of the aforesaid act of Congress have at any time found or intimated that your orator is guilty of any moral turpitude in his aforesaid dealings with his customers or in the accumulation of the aforesaid credit in the aforesaid feed account."

"Your orator alleges that the evidence produced before and considered by said Secretary of Agriculture shows that the moneys accumulated as a credit in your orator's feed account were not the result of any unjust charge or practice, but were due unavoidably to the method of purchasing and disposing of hay and feed in the Union Stockyards, as fully described in said original bill of complaint, and were not accumulated by virtue of any intentional overcharge by your orator against his customers, or any of them."

The plaintiff alleges that he has discontinued the practice of overcharging his customers for feed, and makes the following averments on that subject, in paragraphs 9 and 13 of the supplemental bill:

"9. And your orator avers that there has not been, and that no claim is made by said Secretary of Agriculture or any of his representatives or agents that there has been, any fund accumulated in said feed account as a credit thereto since said May 28, 1919, and that the said two letters of March 19, 1920, herein set out, referred to, and are concerned with, the accumulation and distribution of exactly the same fund as was referred to in said letter of August 11, 1919, set out in the original bill of complaint, and which was sent to your orator by said David Franklin Houston, the predecessor, as Secretary of Agriculture, of the said E. Meredith, the present Secretary of Agriculture."

"13. Your orator further avers that since the receipt of said letter of August 11, 1919, set out and referred to in the original bill of complaint, he has given assurances to the then Secretary of Agriculture, David Franklin Houston, that he would endeavor in every possible way to prevent the accumulation of any credit in the feed account, and would in every possible way endeavor to make proper credits and allowances to shippers whose cattle failed to consume all of the hay and feed ordered for their consumption by your orator or the shipper, or both, and that he would endeavor, so far as possible, to keep a strict and accurate check upon the deliveries of hay and feed to the pens where live stock are fed and watered, to the end that, if at all avoidable, the shipper would be charged only for the amount of hay and feed actually consumed by his live stock."

By the letter of March 19, 1920, the Secretary notifies plaintiff that he will revoke his license if he does not distribute the $2,525.60 among his customers, but will not do so because he fails to so distribute, but because he has violated the law.

Finding nothing in the record to show any such violation, the motion to dismiss should be denied, and the temporary injunction continued until further ordered. Since the Secretary's decision does not show the violation of either the statute or the regulation to have been a willful one, and the supplemental bill clearly showing that the excess charges were not willful, no violation appears—no ground for revocation.

[3] The suit is not one against the United States, but to restrain the ultra vires action of its officer. U. S. v. Lee, 106 U. S. 196, 210, 1 Sup. Ct. 240, 27 L. Ed. 171; Lane v. Watts, 234 U. S. 525, 540, 34 Sup. Ct. 965, 58 L. Ed. 1440; Id., 235 U. S. 17, 35 Sup. Ct. 3, 59 L. Ed. 104.

[4] Nor is this a suit to restrain criminal proceedings. There is no adequate remedy at law. The Secretary has done nothing, but only makes a threat. Defendants make no suggestion of any specific legal remedy. Irreparable injury would result from a revocation of the license. This is so obvious as to require no further statement.